UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
BLANCA VINANSACA A/K/A BLANCA PANORA,

               Plaintiff,

       -against-

HOWARD PLOTKIN,
521 W. 180th STREET LLC,



               Defendants.
----------------------------------------------------------------x

Civil Action No._____

**COMPLAINT**

**Jury Trial
Requested**

## NATURE OF THE ACTION

1.     Plaintiff Blanca Vinansaca A/K/A Blanca Panora ("Ms. Vinansaca") brings this action to recover unpaid wages for work she performed for Defendants Howard Plotkin and 521 West 180th Street LLC ("Defendants").

2.     Ms. Vinansaca was employed as the building porter at Defendants' property in Upper Manhattan from about November 15, 2013 to on or about June 26, 2019, working seven days per week caring for and maintaining Defendants' property. Ms. Vinansaca takes great pride in her work, as can be attested by the building's many residents who are familiar with Ms. Vinansaca's work ethic and who have come to rely on her.

3.     Despite Ms. Vinansaca's diligence, Defendants have never paid Ms. Vinansaca for a single hour of work. Rather, the sole compensation Defendants provided to Ms. Vinansaca was the "privilege" of allowing her to store the cans and bottles that she collected for desperately

1

needed income at the building – originally in the building's backyard and then in a small supply room located in the building's basement.

4.      Defendants knowingly and wantonly violated federal and state law by failing to pay Ms. Vinansaca for any of her work in the Building for over six years, and as a result of Defendants' unlawful actions, Ms. Vinansaca is owed, *inter alia*, over one hundred thousand dollars in unpaid wages..

5.      Plaintiff now brings this action for unpaid wages pursuant to the Fair Labor Standards Act 29 U.S.C. § 201 ("FLSA") and Articles 6 and 19 of the New York Labor Law ("NYLL"), as well as for claims of quantum meruit and unjust enrichment.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the Plaintiff's claims under 29 U.S.C. § 201, *et seq.*, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337(a).

7.      This Court has supplemental jurisdiction over all of Plaintiff's New York state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as Defendants have a principal place of business in the Southern District of New York, Defendants employed Plaintiff in this District, the violations complained of herein took place in this District, and the Plaintiff resides in this District.

**PARTIES**

9.    Ms. Vinansaca resides at 521 West 180th Street, New York, NY 10033.

10.   At all relevant times, Ms. Vinansaca was employed by Defendants within the meaning of the FLSA and NYLL as a porter for 521 West 180th Street, New York, NY 10033 ("Building").

11.   Defendant 521 West 180 Street LLC is the corporate owner of the Building and is a domestic limited liability company organized under the laws of the State of New York with a principal place of business at 521 West 180th Street, Mgmt., New York, NY 10033.

12.   At all relevant times, Defendant Howard Plotkin was and is the principal owner and member of Defendant 521 West 180 Street LLC within the meaning of the New York Business Corporation Law and Limited Liability Company Law.

13.   At all relevant times, Defendant Plotkin was and is the managing agent registered with the New York State Department of Housing Preservation and Development ("HPD") for Defendant 521 West 180 Street LLC.

14.   At all relevant times, Defendant Plotkin owned and owns multiple for-profit enterprises which are jointly managed, controlled, owned and operated, functioning as a single common enterprise. As such, Defendant Plotkin collectively owns, operates, and manages at least three residential buildings in New York City generating well over $500,000 in annual income.

15.   At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA and NYLL.

## STATUTORY AND REGULATORY FRAMEWORK

### Fair Labor Standards Act

16.     Congress passed the Fair Labor Standards Act ("FLSA") in 1938 in order to protect workers from substandard wages, oppressive working hours, and labor conditions detrimental to the maintenance of a minimum standard of living. The statute has both remedial and humanitarian purposes designed to protect human dignity.

17.     At the heart of the FLSA are provisions requiring employers to pay a minimum wage and setting overtime pay rates. 29 U.S.C. § 206.

18.     Since July 24, 2009, the federal minimum wage has been set at $7.25 per hour. 29 U.S.C. § 206.

19.     The FLSA defines "employ" to mean "suffer or permit to work." 29 U.S.C. § 203.

20.     Multiple independent entities are considered a single common enterprise under the FLSA where they engage in related activities performed through unified operation or common control, for a common business purpose. 29 U.S.C. § 203.

21.     A common enterprise engaged in commerce, including a business that "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and which has an annual gross volume of business of not less than $500,000, is a covered employer under the FLSA and subject to its minimum wage and overtime provisions. 29 U.S.C. §§ 203, 206-207.

22.     Employers covered by the FLSA must make, keep, and preserve records with respect to each of its employees that state the wages, hours, and other conditions and practices of employment. 29 U.S.C. §§ 211(c), 215(a).

4

23.     A covered employer under the FLSA who does not comply with the FLSA's minimum wage and overtime requirements, resulting in an underpayment or other FLSA violation, is liable to the employee for the amount of unpaid wages and additional liquidated damages equal to 100% of the total amount of unpaid wages and overtime. 29 U.S.C. § 216(b).

24.     If the employer is considered to have "willfully" violated the FLSA, the statute of limitations to recover unpaid wages is three years. 29 U.S.C. § 255(a).

25.     The FLSA also allows for the recovery of attorney fees, costs, and expenses to a prevailing plaintiff in a FLSA suit. 29 U.S.C. § 255(b).

## New York Labor Law

26.     The minimum wage and overtime provisions of the New York Labor Law ("NYLL") were enacted to eliminate the condition of uncompensated or undercompensated work. In passing the minimum wage and overtime provisions, the New York Legislature emphasized that uncompensated labor harms not only workers, but the well-being of society as a whole.

27.     In passing the NY Minimum Wage Act , the legislature found:

> There are persons employed in some occupations in the state of New York at wages insufficient to provide adequate maintenance for themselves and their families. Such employment impairs the health, efficiency, and well-being of the persons so employed, constitutes unfair competition against other employers and their employees, threatens the stability of industry, reduces the purchasing power of employees, and requires, in many instances, that wages be supplemented by the payment of public moneys for relief or other public and private assistance. Employment of persons at these insufficient rates of pay threatens the health and well-being of the people of this state and injures the overall economy.

> NYLL § 650 *et seq.*

28.    Under the NYLL, any individual, limited liability company, corporation, or organized group acting as an employer is a covered employer who must abide by, *inter alia,* the NYLL's minimum wage and overtime provisions. NYLL § 190(3).

29.    A covered employee under the NYLL is any individual employed or permitted to work by an employer in any occupation. NYLL § 651.

30.    The NYLL established a minimum wage of $7.25 per hour effective July 24, 2009, which was increased to $8.00 on December 31, 2013, increased to $8.75 on December 31, 2014, increased to $9.00 on December 31, 2015, increased to $11.00 on December 31, 2016 for businesses with eleven or more employees, increased to $13.00 for businesses with eleven or more employees on December 31, 2017, and increased to $15.00 per hour on December 31, 2018 for businesses with eleven or more employees.  NYLL § 652.

31.    NYLL § 663(1) provides that employees are entitled to recover underpayments under the established minimum wage, and, unless the employer proves a good faith basis to believe that its underpayment was in compliance with the law, additional liquidated damages equal to 100% of the total amount of underpayment.

32.    NYLL § 633(1) also provides for attorney fees and costs.

33.    The statute of limitations for the recovery of underpayments of wages is six years. NYLL § 633(3).

34.    NYLL § 191 requires that an employee be paid no less frequently than every two weeks and that a manual worker be paid no less frequently than weekly.

35.    NYLL § 195 requires all employers to provide employees with a written notice that contains the rate of pay and the lodging allowance.

6

36.     NYLL § 198 provides that employees are entitled to recover any unpaid wages and, unless the employer proves a good faith basis to believe that its underpayment was in compliance with the law, additional liquidated damages equal to 100% of the total amount of unpaid wages and overtime.

37.     NYLL § 193(3) has a statute of limitations for the recovery of unpaid wages of six years.

38.     The NYLL § 198 also allows prevailing plaintiffs to recover pre- and post-judgment interest, costs, and attorneys' fees.

### New York State Multiple Dwelling Law

39.     Multiple Dwelling Law ("MDL") § 83, provides in relevant part that: "Whenever there are thirteen or more families occupying any multiple dwelling and the owner does not reside therein, there shall be a janitor, housekeeper or some other person responsible on behalf of the owner who shall reside in said dwelling or within a dwelling located within a distance of two hundred feet from said dwelling, and have charge of such dwelling."


### STATEMENT OF FACTS

### Plaintiff's Employment

40.     Ms. Vinansaca is a 53-year-old monolingual Spanish speaker with a limited educational background.

41.     Since March 2019, Ms. Vinansaca has resided at 521 West 180th Street, New York, New York 10033 (the "Building"), in the basement apartment of a rent stabilized building with 21 units, including Ms. Vinansaca's apartment, in the neighborhood of Washington Heights, Manhattan.

42.     Prior to residing at 521 West 180th Street, Ms. Vinansaca, her husband and four children lived nearby to the Building with her father in a small cramped two-bedroom apartment located at 206 Audubon Street, New York, NY 10033.

43.     Ms. Vinansaca has collected bottles and cans for desperately needed income for over ten years.

44.     In or around early 2013, Ms. Vinansaca began storing her empty bottles and cans in the Building backyard with the permission of Martin Sanchez, who was the Building's porter/superintendent.  The client and Martin Sanchez knew each other from the neighborhood and attended the same church.  In return for being  allowed to store her bottles in the Building backyard, Ms. Vinansaca assumed the garbage and recycling duties in the Building.

45.     Ms. Vinansaca would go to the Building daily to perform the garbage and recycling duties.

46.     Defendant Plotkin and his employee, Jorge, often saw Ms. Vinansaca collecting the garbage and they would regularly talk with Ms. Vinansaca.

47.     Martin Sanchez was terminated from the superintendent position in around November 2013 by Defendant Plotkin.

48.     New York City requires landlords to provide live-in porters or have a porter reside within 200 feet of the building for buildings with 13 or more apartments unless the owner lives in the building.

49.     In November 2013, Defendant Plotkin asked Ms. Vinansaca to be the Building porter after Mr. Sanchez was fired and explicitly explained what her porter duties would entail.

50.     Defendant Plotkin promised to pay Ms. Vinansaca $250.00 per month for her porter work in the Building. Defendant Plotkin also told Ms. Vinansaca that she could continue to store her bottles and cans in the Building backyard.

51.     Ms. Vinansaca told Defendant Plotkin that her empty bottles and cans were often stolen from the backyard.  Defendant Plotkin then agreed to allow Ms. Vinansaca to store her cans and bottles in the small supply room in the Building's basement.

52.     Ms. Vinansaca accepted the position offered by Defendant Plotkin.

53.     Defendant Plotkin authorized Ms. Vinansaca to order and purchase supplies for the Building such as garbage bags, recycle bags, bleach, roach spray, flying insect spray, rat and mouse traps, Tomcat, rock salt, jimmy deadlocks, keys, floor cleaner, glass cleaner and paper towels from the local hardware store, Apartment House Supply Company Inc.. Ms. Vinansaca was an authorized account signatory and often signed the purchase slips.

54.     From on or about November 15, 2013 to on or about June 26, 2019, on average Ms. Vinansaca worked 7 days a week for five hours per day and received no pay for a single hour worked.

55.     From on or about November 15, 2013, to on or about June 26, 2019, Ms. Vinansaca's daily duties consisted of maintaining and monitoring the Building and performing janitorial tasks, including *inter alia*, the following activities on a weekly basis:

        a.   Checking the boiler;

        b.   Sorting the garbage and recyclables;

        c.   Collecting and taking out the garbage and recyclables;

        d.   Cleaning the windows and mirrors;

        e.   Ordering supplies at the hardware store;

      f.   Picking up supplies from the hardware store;

      g.   Cleaning the roof;

      h.   Sweeping and mopping the lobby, the stairs, and the building hallways; and

      i.   Hosing down and sweeping the front to the building.

56.    Ms. Vinansaca's job duties further included, *inter alia,* the following activities, on an as-needed basis:

      a.   Cleaning vacated apartments;

      b.   Greeting inspectors from government agencies and being present for various building inspections; and

      c.   Removing snow and leaves when necessary.

57.    Defendant Plotkin would often call Ms. Vinansaca's daughters, who speak English, on their cell phones or Ms. Vinansaca's cell phone with specific tasks that Ms. Vinansaca needed to do in the Building.

58.    Defendant Plotkin would also text Ms. Vinansaca and her daughters with directives about what work needed to be done in the Building. Ms. Vinansaca would ask one of her daughters to translate the text if she did not understand it. Employee Jorge would also text Ms. Vinansaca with jobs that needed to be completed in the Building.

59.    Defendant Plotkin would compliment Ms. Vinansaca's work and note the cleanliness of the building.  Whenever Ms. Vinansaca saw Defendant Plotkin in the Building, she would ask him when she was going to be paid and he would always respond, "It's coming, it's coming."

60. Defendant Plotkin provided Ms. Vinansaca with all necessary cleaning agents and cleaning equipment needed to perform her duties.

61. Ms. Vinansaca handled, used or otherwise worked with goods or materials that have been moved in or produced from interstate commerce, which includes, but is not limited to, cleaning and maintenance materials such as Clorox bleach, Ajax, Windex, brooms, mops and garbage bags used to maintain the Building.

62. Defendants have profited from Ms. Vinansaca's free labor.

63. Tenants in the Building know and refer to Ms. Vinansaca as the porter and would regularly ask her to do things around the Building that only an employee would do.

64. On or about July 17, 2019, Defendants were sent a demand letter for Ms. Vinansaca's unpaid wages through her attorneys, Manhattan Legal Services, and Defendants did not respond. Even after receipt of this demand letter, Defendants did not pay Ms. Vinansaca her owed wages.

65. Upon information and belief, Defendant Plotkin has at least eleven employees including but not limited to Ms. Vinansaca, Jorge, payroll specialists, secretary, porters and superintendents who work in the three buildings owned and/or managed by Defendant Plotkin that are located in Manhattan and the Bronx.

66. In or around March 2019, Defendant Plotkin and Employee Jorge asked Ms. Vinansaca if she wanted to move into the Building's basement apartment for $1000.00 per month in rent.

67. On or about March 10, 2019, Ms. Vinansaca moved into the Building's basement apartment with two of her four children and her husband. Ms. Vinansaca continuously asked Defendants for a lease but never received one.

11

**Defendants' Eviction Proceeding Against Ms. Vinansaca**

68.     In May 2019, shortly after inviting Ms. Vinansaca to move into the basement apartment, Defendants commenced an eviction proceeding against Ms. Vinansaca.

69.     Defendants' eviction papers accused Ms. Vinansaca of squatting in her apartment, despite the fact that Defendants had consented to her use of the space, and indeed had explicitly allowed and facilitated Ms. Vinansaca to work for no compensation.

70.     Defendants' eviction papers also inexplicably included a demand for use and occupancy of $5,000 for the basement apartment, despite Defendants knowing full well that they had violated federal and state law by not paying Ms. Vinansaca a single dollar for over six years of work that she performed in the Building at their request.

71.     The eviction proceeding is ongoing and the next court date is New York Civil Court, Housing Part is November 26, 2019 .

**Common Enterprise**

72.     Upon information and belief, Defendant Plotkin owns, manages, and/or operates a total of three companies, each of which owns a residential apartment building in New York City for a total of three buildings and 74 residential apartments as follows:

> a.  521 West 180th ST LLC, which owns the building located at 521 West 180th Street, New York, NY 10033 and contains 21 apartments;
>
> b.  Shana 1 Corp, which owns the building located at 556 West 141 Street, New York, NY 10031 and contains 31 apartments; and
>
> c.  1512 LLC, which owns the building located at 1512 Amsterdam Avenue, New York, NY 10031 and contains 22 apartments.

73.     Upon information and belief, all three of Defendant Plotkin's related buildings in this common enterprise conduct substantial portions of their business and receive mail at the same shared place of business: P.O. Box 109, Englewood NJ 07631-0109.

74.     Upon information and belief, all three of Defendant Plotkin's related buildings in this common enterprise use a common address for purposes of property tax filings with the New York State Department of Finance at P.O. Box 109, Englewood NJ 07631-0109.

75.     Defendant Plotkin is the registered managing agent with the NYC Department of Housing Preservation and Development for each and every residential apartment building listed in Paragraph 72 (a-c).

76.     Defendant Plotkin is the managing agent, head officer, and partner/member of Defendant 1512 LLC, within the meaning of the New York City Limited Liability Company Law ("NYC LLC Law").

77.     Defendant Plotkin is the managing agent, head officer, and partner/member of Defendant 521 West 180th St LLC, within the meaning of NYC LLC Law.

78.     Defendant Plotkin is the managing agent, head officer, and shareholder of Shana 1 Corp, within the meaning of the New York City rules and regulations.

79.     Upon information and belief, Defendant Plotkin runs and manages all 3 buildings and related corporate entities as one common enterprise, engaged in a common purpose.

80.      Upon information and belief, Defendant Plotkin's three buildings utilize one payroll system, share contracts, and regularly send employees to and from different buildings to perform work.

81.     Upon information and belief, the entities constituting Defendant Plotkin's common enterprise jointly conduct real estate transactions, including securing joint mortgages and transferring titles for the purpose of investing in real estate and generating profits and income for Mr. Plotkin.

82.     Upon information and belief, the entities constituting Defendant Plotkin's common enterprise are all engaged in a common business purpose of generating profits and income for Mr. Plotkin by investing in, buying, maintaining, renting, and operating residential apartment buildings in New York City.

83.     Thus, all three buildings constitute one common enterprise within the meaning of the FLSA.

84.     Upon information and belief, Defendant Plotkin and his common enterprise collectively receives gross annual revenue of over $500,000.  The 74 units in the three buildings would have to rent for an average of only $565.00 per month in order to generate annual gross revenue of $500,000.

**Individual Liability**

85.     Defendant Plotkin individually also constitutes an employer of Plaintiff within the meaning of the FLSA.

86.     As alleged above, Defendant Plotkin holds managing member and executive titles in many of the companies within the common enterprise.

87.     As the HPD registered managing agent for each of the three buildings, upon information and belief, Defendant Plotkin operated, maintained, and supervised each of the three buildings within the enterprise by, *inter alia*, collecting rent, scheduling regular building maintenance and janitorial services, hiring and designating employees to assist in operating and supervising each building, commencing any necessary court proceedings, and ensuring compliance and registration with New York City rent stabilization laws, multiple dwelling codes, and administrative codes.

## FIRST CLAIM FOR RELIEF

### Unpaid Minimum Wages in Violation of the FLSA

88.     Plaintiff Blanca Vinansaca realleges and incorporates by reference each and every allegation contained in all preceding paragraphs as though fully set forth herein.

89.     Defendants are employers within the meaning of the FLSA. 29 U.S.C. § 203(d).

90.     Defendants and their related companies operate as a common enterprise within the meaning of the FLSA.

91.     Defendants and their related companies in the common enterprise generate annual revenue, upon information and belief, of over $500,000 per year.

92.     Plaintiff was employed by Defendants within the meaning of the FLSA.

93.     Plaintiff was an employee within the meaning of the FLSA.

94.     Defendants failed to pay Plaintiff any wages whatsoever for the hours she worked while employed by Defendants from November 2013 until the present, let alone pay her the federal minimum wage.

95.     The federal minimum wage is and has been at all relevant times $7.25 per hour worked.

96.     Defendants are jointly and severally liable for the acts and omissions complained of herein.

97.     Plaintiff is entitled to unpaid minimum wages for every hour she worked while employed by Defendants.

98.     Defendants' failure to pay the minimum wage was willful, knowing, wanton, and reckless.

99. As a result of Defendants' violations of the FLSA, Plaintiff is entitled to an additional amount equal to her unpaid minimum wages as liquidated damages.

100. As a result of Defendant's willful and wanton failure to comply with the FLSA, Plaintiff is entitled to unpaid wages and liquidated damages going back three years from the filing of this Complaint.

101. Plaintiff is further entitled to recover costs and fees of this litigation, reasonable attorneys' fees, and post-judgment interest.

## SECOND CLAIM FOR RELIEF

### Unpaid Wages in Violation of NYLL

102. Plaintiff Blanca Vinansaca realleges and incorporates by reference each and every allegation contained in all preceding paragraphs as though fully set forth herein.

103. Defendants are employers within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

104. Plaintiff was employed by Defendants within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

105. Plaintiff was an employee within the meaning of the NYLL. NYLL §§ 190(3) and 651(5).

106. Defendants failed to pay Plaintiff any wages whatsoever for any of the hours she worked while employed by Defendants.

107. Defendants are jointly and severally liable for the acts and omissions complained of herein.

108.    Plaintiff is entitled to unpaid wages, costs, reasonable attorneys' fees, and pre- and post-judgment interest, going back six years from the filing of this Complaint pursuant to NYLL § 198.

109.    Defendants can show no good faith basis for failing to pay Plaintiff any wages. As a result of Defendants' violations of NYLL, Plaintiff is entitled to an additional amount equal to her unpaid wages as liquidated damages going back six years from the filing of this Complaint. NYLL § 198.

### THIRD CLAIM FOR RELIEF

**Unpaid Minimum Wages in Violation of NYLL**

110.    Plaintiff Blanca Vinansaca realleges and incorporates by reference each and every allegation contained in all preceding paragraphs as though fully set forth herein.

111.    Defendants are employers within the meaning of the NYLL.

112.    Plaintiff was employed by Defendants within the meaning of the NYLL.

113.    Plaintiff was an employee within the meaning of the NYLL.

114.    Defendants failed to pay Plaintiff the established minimum wage for the hours she worked while employed by Defendants.

115.    Plaintiff is therefore entitled to recover unpaid minimum wages in the amount of the applicable New York State minimum wage for the hours she worked while employed by Defendants. NYLL § 663.

116.    The NYLL established a minimum wage of $7.25 per hour effective July 24, 2009 for most industries, which was increased to $8.00 on December 31, 2013, increased to $8.75 on December 31, 2014, increased to $9.00 on December 31, 2015, increased to $11.00 on

December 31, 2016, increased to $13.00 on December 31, 2017, and increased to $15.00 per hour on December 31, 2018. NYLL § 652.

117.    Defendants can show no good faith basis for failing to pay Plaintiff any wages. As a result of Defendants' violations of the NYLL, Plaintiff is entitled to an additional amount equal to the unpaid State minimum wages she is owed as liquidated damages going back six years from the filing of this Complaint. NYLL § 663.

118.    Plaintiff is further entitled to the costs and fees of litigation, reasonable attorneys' fees, and pre- and post-judgment interest.

## FOURTH CLAIM FOR RELIEF

### Failure to Provide Notice of Pay Rate and Hours in Violation of NYLL

119.    Plaintiff Blanca Vinansaca realleges and incorporates by reference each and every allegation contained in all preceding paragraphs as though fully set forth herein.

120.    Defendants are employers within the meaning of the NYLL.

121.    Defendants employed Plaintiff within the meaning of the NYLL.

122.    Plaintiff was an employee within the meaning of the NYLL.

123.    Defendants failed at all relevant times to provide Plaintiff with notice of her rate of pay as required under the NYLL.

124.    As a consequence of Defendants' violation of NYLL, Plaintiff is entitled to recover damages of $50.00 for each work day that the violations occurred or continue to occur, up to a total of $5,000.00, together with costs, reasonable attorneys' fees, and any other relief that the Court in its discretion deems necessary or appropriate. NYLL § 198.

## FIFTH CLAIM FOR RELIEF

### In the alternative: *Quantum Meruit*

125.   Plaintiff Blanca Vinansaca realleges and incorporates by reference each and every allegation contained in all preceding paragraphs as though fully set forth herein.

126.   Defendants failed to pay wages for non-gratuitous services rendered in good faith by Plaintiff, which Defendants willingly accepted.

127.   In the alternative to the abovementioned statutory claims, Defendants are liable at common law for *quantum meruit.*

## SIXTH CLAIM FOR RELIEF

### In the alternative: Unjust Enrichment

128.   Plaintiff Blanca Vinansaca incorporates by reference each and every allegation contained in all preceding paragraphs as though fully set forth herein.

129.   Defendants have been unjustly enriched as a result of Plaintiff's labor, and it would be against equity and good conscience to permit Defendants to retain the benefit they have received.

130.   In the alternative to the abovementioned statutory claims, Defendants are liable at common law for unjust enrichment.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

    **a.**   Award Plaintiff all unpaid minimum wages owed, as determined by the applicable State and federal minimum wages, whichever is higher; and in the alternative,

restitution for unjust enrichment and *quantum meruit* in the amount of the value of services rendered;

b.   Award Plaintiff an additional amount equal to the unpaid lawful minimum wages owed as liquidated damages, due to Defendants' willful violations of the FLSA and NYLL;

c.   Award Plaintiff $50.00 for each day Defendants failed to provide notice of her pay rate as required by the NYLL;

d.   Award Plaintiff reasonable attorneys' fees and costs of litigation;

e.   Award pre-judgment and post-judgment interest; and

f.   Grant such other and further relief as this Court deems necessary and proper.


Dated: November 7, 2019
        New York, New York

                                Respectfully submitted:

                                JULIA PRICE ROSNER

                                SAGAR SHARMA

                                MANHATTAN LEGAL SERVICES
                                Attorneys for Plaintiffs
                                1 West 125th Street, 2nd Floor
                                New York, NY 10027
                                Tel: (646) 442-3148